UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT KANTOR,

        Defendant.

CR 02-169 LH (New Mexico)
Criminal No. 96-838 (New York)

## MOTION FOR EARLY DISCHARGE FROM SUPERVISED RELEASE

Defendant Robert Kantor, through his attorney Ray Twohig, moves that this Court terminate his supervised release several months early by virtue of the complete success of his supervision, the business and personal limitations which such supervision continues to impose without any significant relationship to any purpose for supervised release, and the conspicuous lack of necessity for further supervision. The grounds for this motion are as follows:

1.    On December 19, 1997, Defendant was sentenced on this federal Conviction in the Southern District of New York, having been arrested there on July 10, 1996. As a result of 5K1.1 motion filed by the government, the trial judge departed downward from the guideline sentence and placed the Defendant on five (5) years of supervised release. The Court directed that he serve up to two hundred (200) hours of community service, as may be directed by the probation department. His supervised release was transferred to New Mexico and the case has since been under this Court's jurisdiction. **The five year period of supervision will end in December, 2002.**

2.      Prior to his arrest in this case, the Defendant had traveled extensively for business, family and pleasure.  His wife, Kathy Kantor, is a long time employee of American Airlines and so travel for the family is very inexpensive.  This has permitted Mr. Kantor and his wife to travel frequently to in Europe, the Caribbean and Alaska for pleasure. They have also traveled frequently in the United States for family purposes. Defendant and his wife have two sons.  Jeffrey, age 23, is presently living in Phoenix, having received his BA degree in Latin American Studies from the University of Arizona in August, 2001. He has begun his career in real estate. Greg will be 18 in June and will graduate that same month from Sandia Prep. He has been accepted to the University of Arizona School of Engineering, where he will begin classes in the Fall.  Mr. Kantor's wife's family resides in New Jersey and Defendant has a close relationship with them, with frequent visits. Defendant's family practice of extensive travel has been severely curtailed during his supervision, and he seeks to be permitted to resume it soon for the benefit of the entire family.

3.      Defendant previously filed a motion in this Court through undersigned counsel to expand his travel. By order dated April 26, 2001, this Court denied the motion, left the matter to probation authorities, and Defendant's travel has continued to be restricted. The effect has been to deprive him and his family of his attendance at various events which would have been beneficial to his family and business relationships. His business development has been restricted to New Mexico.

4.      The Defendant had no prior criminal conviction record, and has had none since this conviction. He was an afterthought in a sting operation conducted by the Drug Enforcement Administration using a former friend of the Defendant named Thomas

2

Keen Edenfield.  Mr. Edenfield was a pilot who, by virtue of his previous criminal

activity, had found himself in a position where he deemed it necessary to function as a

government informant.  He had previously been a friend of the Defendant and, though

Edenfield had been incarcerated on other matters before the sting operation, their

friendship continued.  When Edenfield was released from prison, the Defendant allowed

him to use his offices and phone lines without the payment of rent to assist Edenfield in

restarting his life.

   5. Independently of his relationship to Defendant, Edenfield became involved

in criminal transactions that led to his arrest, and put him in a position to participate in

the sting at the behest of the government, and on its behalf.  Mr. Kantor was not

involved in the scheme at its inception. The government developed a plan to transport

cocaine from Columbia through the use of Edenfield as a pilot in order to prosecute

Columbians. During the period when the plan was developing, Mr. Kantor was solicited

by Edenfield to participate in order to add another defendant to the case.

   6. Edenfield tried unsuccessfully to persuade Mr. Kantor to carry out many

different possible functions in the transaction he described to Kantor, but ultimately

Kantor agreed to just one limited activity.  Edenfield was supposed to receive a

substantial sum of money for flying cocaine into the country, and Defendant was told he

would be receiving the sum of $250,000 for assisting Edenfield. Mr. Kantor's role was

limited to taking possession of and safekeeping the money that Edenfield was to receive

when he delivered the cocaine.  Mr. Kantor was to have no role in handling the cocaine

at all. When apprehended, Mr. Kantor acknowledged his actions, cooperated with the

prosecution, and was available to testify as a government witness in the event the case

went to trial. No trial ever took place, and so Mr. Kantor did not ultimately testify. However, he maintained contact with the Assistant United States Attorney prosecuting the case throughout its pendency, and assisted as requested.

7.    During the pendency of the federal criminal case, Defendant was subject to very slight limitations on his travel through pretrial services, but was permitted to travel both within and outside the continental United States.  He never violated any conditions of travel from the time of his arrest until the present date. Importantly for this motion, **he has never violated any condition of his pretrial or supervised release during the 5 ¾ years since his arrest**.

8.    Since his sentencing and his transfer of supervised release to New Mexico, the Defendant has traveled to a very restricted extent as a result of limitations imposed by the U.S. Probation Office in New Mexico and this Court.  These restrictions have had an impact on Defendant, his family and his business development.

9.    In 1985, Defendant and his wife built a vacation rental house in Port Antonio, Jamaica for business purposes. (See Ex. A).  A week's rental of the home costs $1,500 to $2,000.  The home is staffed with a cook and gardener.  Its appeal includes Jamaican meals and cultural activities.  Mr. Kantor has personally managed the business, primarily from Albuquerque. However, he has had to make many trips to Jamaica over the years for management purposes. None of them ever involved any of the activities which led to his conviction, and none of the activities associated with the case which led to his supervised release had anything whatsoever to do with Jamaica or with his property in that country. His travel there continues to be restricted.

4

10.    During the course of Defendant's supervised release, he has made many donations of his vacation villa to fund raising efforts. He has also assisted in completing his community service in a creative and effective manner. Some of the attached exhibits will help the court to see the level of rehabilitation which has been achieved, and will confirm the positive approach Mr. Kantor has taken to his life since the offense.

11.    Exhibit B is a letter from Marty Senna prepared in order to assist counsel in this long planned request for early release from supervision. The letter demonstrates the successful efforts Mr. Kantor has made to participate fully in his rehabilitation. His completion of community service, and his exemplary role in a project to assist abused women bespeak a man who has gone far further than the minimal community service the Court often sees.

12.    After his conviction, a question arose whether Mr. Kantor would be permitted to retain his New Mexico real estate license. Based significantly upon a letter from the Assistant United States Attorney who prosecuted Mr. Kantor's case, John F. Caruso, (Exhibit C) Mr. Kantor's license was not revoked. Mr. Kantor's character was evident to Mr. Caruso as well as to John Campbell, a prominent New Mexico attorney who has written a letter to the Court, which was also written in support of this motion for early release. (Exhibit D)

13.    As Exhibits E, F and G show, Mr. Kantor has donated a week at his vacation villa in Port Antonio, Jamaica on several occasions for various fund raising purposes. These include donations to the Boy Scouts of America, Humane Society of Taos, and the Millicent Rogers Museum as well as Albuquerque Public Schools. He has also assisted in other charitable activities. The letter from Diane Enright and Joel

Schantz provides an illustration (Exhibit H) as does the letter from Brad Allison, until recently the Superintendent of the Albuquerque Public Schools. (Exhibit I). The letter from Gwenellen Janov and Susan Williams (Exhibit J) helps to place the Defendant's motion in context. It is written by two (2) tenants who have known him well.

14.    Mr. Kantor has had health problems in recent years, experiencing a stroke due to high blood pressure. His health is medically managed. His health limitations and doctor's recommendations now counsel a less stressful lifestyle than that of a developer of real estate projects. He completed several such projects while on supervised release. One is a Southwestern office complex at 1301-09 Rio Grande N.W. (Exhibits K-1 to K-4). The other is a townhouse development in Taos (Exhibits L-1 to L-3). He now wishes to work in other business areas which should be less stressful than constructing developments, and has the opportunity to do so. He operates his own real estate firm, but now plans to seek a position in a larger commercial brokerage company. His travel restrictions prevent him from doing so.

15.    In addition, there are many business opportunities he regularly encounters due to friendships and other business relationships. Exploration of these business opportunities specifically require out of state travel, the kind which has been restricted throughout Defendant's period of supervised release. This travel may be necessary on short notice, will be important to business transactions which Defendant is working on, and without it, Defendant cannot realistically be effective in expanding his own real estate business without that option. Recently, two specific possible opportunities had to be passed up because travel was impossible. Defendant has lost significant sums in possible equity and profits due to these restrictions.

16.     Defendant has not taken a family vacation since before his arrest.

17.     Defendant has written a letter to the Court, which provides additional insight in consideration of this motion.  (Exhibit M)

Putting aside the restrictions on Defendant, and without belaboring the effects of continuing them until December, 2002, it is evident that Defendant has paid his debt to society, has gained the maximum benefit from supervised release, and is a success story. He has turned his life totally around from the somewhat gullible dupe of a former friend. He would never get within miles of an illegal transaction. He has a positive outlook on the future, and has used his supervised release time for positive purposes. He is a responsible father who seeks more involvement in his sons' lives. He is a husband who wants to continue to make up for his actions to his wife as much as possible. He has more than completed his community service requirements, taking an active role in community organizations and making donations to assist in their fundraising. He has demonstrated that the trial judge and Assistant United States Attorney who didn't seek nor impose incarceration exercised wise discretion.

Respectfully submitted,

RAY TWOHIG, P.C.

RAY TWOHIG
Attorney for Defendant
8998 Rio Grande Blvd., N.W.
Albuquerque, New Mexico 87114
505/898-0400
FAX: 505/898-0004

I hereby certify that a true and
correct copy of this Motion was
delivered to the probation office
and the U.S. Attorney's Office
on March 25, 2002.

Ray Twohig

THE EXHIBITS ATTACHED TO THIS

PLEADING ARE TOO VOLUMINOUS TO

SCAN.  SAID EXHIBITS ARE ATTACHED

TO THE ORIGINAL PLEADING IN THE

CASE FILE WHICH IS LOCATED IN THE

RECORDS DEPARTMENT,  U.S.

DISTRICT COURT CLERK'S OFFICE.